UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRAVIS MILLER,<br>    Plaintiff, | :<br>:<br>: | CIVIL CASE NO.<br>3:24-CV-00986 (JCH) |
| v. | :<br>: | DECEMBER 3, 2024 |
| STATE OF CONNECTICUT<br>DEPARTMENT OF CORRECTION,<br>    Defendant. | :<br>:<br>: | |

**RULING ON MOTION TO DISMISS (DOC. NO. 17)**

**I.     INTRODUCTION**

The plaintiff, Travis Miller ("Mr. Miller"), brings this suit against the Connecticut Department of Correction ("the Department"), alleging that the defendant created a hostile work environment, constrictively discharged the plaintiff, and discriminated against the plaintiff in violation of: under Count One, Title VII of the Civil Rights Act of 1964, section 2000e et seq. of title 42 of the U.S. Code ("Title VII"); and, under Count Two, the Connecticut Fair Employment Practices Act ("CFEPA") section 46a-60(b)(1) of the General Statutes of Connecticut.  Complaint (Doc. No. 1-1) ("Compl.").

The defendant filed a Motion to Dismiss (Doc. No. 17) ("Mot. to Dismiss") and Defendant's Memorandum of Law in Support of Motion to Dismiss (Doc. No. 17-1) ("Def.'s Mem. Supp").  The plaintiff opposes the Motion to Dismiss.  Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Opp'n") (Doc. No. 25).  For the reasons discussed below, the court denies the Motion.

**II.    ALLEGED FACTS**

The court provides a summary of allegations relevant to this Ruling.  As it must, the court assumes the well-pleaded factual allegations in the plaintiff's Complaint are true for the purposes of deciding the defendant's Motion to Dismiss.

1

Mr. Miller, a resident of Connecticut and a Black male, was hired by the Department to serve as a correctional officer at the Corrigan-Radgowski Correctional Center on November 4, 2022.  Compl. at ¶¶ 1, 3–4.  In March 2023, a white corrections officer threatened to slap Mr. Miller after he referred to the white employee as "sir."  Id. at ¶ 7.a.  Mr. Miller reported this interaction to Warden Martin.  Id.[1]  After reporting the incident to the Warden, Mr. Miller was falsely accused of performing one of his job responsibilities, an inmate count, incorrectly.  See id. at ¶ 7.b.

When Mr. Miller turned to the Department's Employee Assistant Program for help, explaining that his work environment was racially hostile, he was promised that a counselor would be appointed to his case, but no counselor was ever appointed.  Id. at ¶ 7.c.  Mr. Miller, who witnessed white employees bully and threaten other minority employees, asked to be transferred to a different facility, but his request was denied.  Id. at ¶¶ 7.d–e.  On March 28, 2023, another white correctional officer, Officer Scott, threatened to kill Mr. Miller after he referred to Officer Scott as "sir."  Id. at ¶ 7.f.  Mr. Miller reported this latest incident to Warden Martin and to the defendant's Human Resources Department, but nothing was done to resolve Mr. Miller's concerns.  Id.

On April 1, 2023, Mr. Miller against sought Warden Martin's help in resolving Mr. Miller's safety concerns, but the Department failed to offer a "meaningful response" to Mr. Miller's request.  Id. at ¶¶ 7.g–h.  Mr. Miller resigned from his position on April 5, 2023.  Id. at ¶ 7.h.

---

[1] The Complaint refers to the Warden as "Warden Marde", Compl. at ¶ 7.a, and "Warden Martin".  Id. at ¶¶ 7.f–g.  The Connecticut Department of Correction website lists only "Warden Martin" as a Warden of Corrigan—from 2020 to 2023.  Corrigan Correctional Center, Connecticut State Department of Correction, https://portal.ct.gov/doc/facility/corrigan-radgowski-cc (last visited Dec. 3, 2024).  Accordingly, the court assumes Mr. Miller reported this incident to Warden Martin.

2

Subsequently, Mr. Miller filed complaints with the Connecticut Commission of Human Rights ("CHRO") and Equal Opportunity Commission ("EEOC"). He received a release from both organizations permitting him to file this lawsuit. Id. at ¶ 9.

## III.   STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

## IV.   DISCUSSION

Mr. Miller alleges hostile work environment, constructive discharge, and workplace discrimination in violation of Title VII and CFEPA. Connecticut courts "look to federal law for guidance on interpreting state employment discrimination law," accordingly, "the analysis is the same under both" Title VII and CFEPA. Craine v. Trinity Coll., 259 Conn. 625, 637 (2002); see, also, Martinez v. Connecticut, State Libr., 817 F. Supp. 2d 28, 55 (D. Conn. 2011) ("The standards governing discrimination, retaliation, and hostile work environment under CFEPA are the same as those governing Title VII.").

A.    Hostile Work Environment

Title VII "forbids employment discrimination on the basis of race, color, religion, sex, or national origin[.]" Richardson v. Comm'n on Hum. Rts. & Opportunities, 532 F.3d 114, 119 (2d Cir. 2008) (internal quotation marks omitted).  This means that an employer is prohibited from, among other things, creating a work environment that is "discriminatorily hostile".  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  A hostile work environment claim is adequately pled if the plaintiff alleges facts that give rise to an inference that the "conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted).  The court is to "consider the totality of circumstances," Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015), such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 17.

The Department argues that most of Mr. Miller's allegations do not adequately raise an inference that his treatment occurred because of his race.  In the Department's view, the allegations that white employees threatened to slap or kill Mr. Miller fail to allege "any other facts that suggest the incident was racially charged." Def.'s Mem. Supp. at 5.  Indeed, according to the Department, the allegations depict nothing more than "poor interpersonal relationship[s]." Id.  The Department also argues that Mr. Miller has failed to allege that it denied his transfer request and failed to offer a counselor

4

because of racial animus.  Id. at 6.  Mr. Miller opposes the Department's arguments, suggesting that he has adequately alleged a pattern of workplace mistreatment aimed at minorities, such as himself.  Pl.'s Opp'n at 3–5.  In particular, he argues that allegations of threats of physical violence are sufficient to survive the Department's Motion to Dismiss.  Id. at 4–5.

"[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts."  Kaytor v. Elec. Boat Corp., 609 F.3d 537, 548 (2d Cir. 2010) (internal quotation marks and citation omitted).  In the instant case, the totality of the relevant facts raise suggest that employees of the Department created a hostile work environment because of the Mr. Miller's race.  For example, Mr. Miller allegedly witnessed white employees bully and threaten violence against minority staff members.  Compl. at ¶ 7.d.  And on one occasion, in March 2023, a white employee threatened to slap Mr. Miller ostensibly for addressing the employee as "sir."  Id. at 7.a.  Soon thereafter, another white employee threatened to kill Mr. Miller for the same reason.  Id. at 7.f.  Mindful that the Second Circuit has "'repeatedly cautioned against setting the bar too high' in establishing the standard for a hostile work environment claim[,]"  Banks v. Gen. Motors, LLC, 81 F.4th 242, 268 (2d Cir. 2023) (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)), the court concludes that Mr. Miller has alleged facts sufficient to raise the inference that he experienced a hostile work environment on the basis of his race.

Contrary to the defendant's contention that the allegations show nothing more than poor interpersonal relationships, Def.'s Mem. Supp. at 5–6, the pleadings suggest white employees engaged in a pattern of threatening behavior directed at minority

employees, including Mr. Miller.  That Mr. Miller was not the target of all of the threats is of no moment because "[r]emarks targeting members of other minorities . . . may contribute to the overall hostility of the working environment for a minority employee." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000).

The defendant next argues that Mr. Miller's allegation that he witnessed bullying and threats directed at minority employees is "insufficient to establish an objectively hostile work environment[.]"  Def.'s Mem. Supp. at 7.  In support, the defendant cites Boyar v. Yellen, 2022 U.S. App. LEXIS 1005 (summary order).  There, the Second Circuit upheld the dismissal of an employee's hostile work environment claim even though the employee alleged that his supervisor threatened to "wring his neck" and yelled at him on several occasions.  Id. at *7.  Notably, however, the Boyar court concluded that the plaintiff "did not allege any facts at all that would support the inference that the behavior he complains of was because of [a protected characteristic.]" Id.  In the instant case, by contrast, the court has already concluded that Mr. Miller's Complaint raises the inference that employees threatened minority staff members and that these threats may have been motivated by race.  See, supra, part IV.A.  And because "[r]acially motivated physical threats and assaults are the most egregious form of workplace harassment," Williams v. New York City Hous. Auth., 154 F. Supp. 2d 820, 825 (S.D.N.Y. 2001), threats of this nature "almost always create a hostile work environment."  Id. (collecting Second Circuit cases).  Accordingly, the court concludes that Mr. Miller has adequately alleged workplace conduct that is objectively severe or pervasive to create a hostile work environment.

The Department's Motion is denied insofar as it seeks to dismiss hostile work environment claims brought under Count One and Count Two of Mr. Miller's Complaint.

B.     Constructive Discharge

To adequately allege constructive discharge, "[s]uch a claim requires the employee to show both (1) that there is evidence of the employer's intent to create an intolerable environment that forces the employee to resign, and (2) that the evidence shows that a reasonable person would have found the work conditions so intolerable that he would have felt compelled to resign." Shultz v. Congregation Shearith Israel of City of New York, 867 F.3d 298, 308 (2d Cir. 2017) (internal quotation marks omitted). The court considers each of these elements in turn.

The defendant argues that the Complaint fails to suggest the Department of Corrections intended to bring about Mr. Miller's resignation. Def.'s Mem. Supp. at 7. Rather, in the defendant's view, the Complaint at most suggests the Department was "ineffective[ ]" in handling Mr. Miller's reports. Id. at 8–9. The Department's ineffectiveness or incompetence is insufficient, according to the Department, to raise an inference that it acted intentionally. Id. In support of this argument, the Department notes that Mr. Miller alleges only that his requests to be transferred to another unit were denied, not that the Department refused to offer him any assistance. Id. at 9. The Department further notes that Mr. Miller resigned about one week after an employee threatened to kill him, which did not give the Department sufficient time to remediate the situation. See id.

In response, Mr. Miller offers two primary arguments. First, he argues that a constructive discharge claim can be successfully maintained without alleging that the employer intended to force the plaintiff to resign. Pl.'s Opp'n at 6 (citing Karagozian v.

USV Optical, Inc., 335 Conn. 426 (2020)).  Instead, the employer must only have intended to create intolerable working conditions.  Id.  Second, Mr. Miller suggests that the Department's failure to relocate him is sufficient to allege constructive discharge.  Id. at 7.  Mr. Miller concludes that because the Department "did not make a good faith effort to find an alternative location for the plaintiff," it permitted "the hostile work environment to continue" and caused Mr. Miller's termination.  Id.

Mr. Miller's interpretation of the standard for alleging constructive discharge is correct, "[t]he Second Circuit has not 'expressly insisted on proof of an employer's specific intent' to force an employee to quit to demonstrate constructive discharge" Corfey v. Rainbow Diner of Danbury, 746 F. Supp. 2d 420, 429 (D. Conn. 2010) (quoting Petrosino v. Bell Atl., 385 F.3d 210, 229-30 (2d Cir. 2004)).  Instead, Mr. Miller must "at least demonstrate that the employer's actions were deliberate and not merely negligent or ineffective."  Petrosino, 385 F.3d at 230 (cleaned up and citations omitted).

An employer may act deliberately when it refuses to address intolerable working conditions, especially when the employee has complained of the poor conditions repeatedly.  See, e.g., Bakhit v. Safety Markings, Inc., 33 F. Supp. 3d 99, 104, 107-08 (D. Conn. 2014) (concluding that a plaintiff had adequately pled constructive discharge after the employer failed to remediate "abusive language and practices" even though a manager repeatedly asked the plaintiff to return to work); Corfey, 746 F. Supp. 2d at 429 (denying summary judgment as to the plaintiff's constructive discharge claim and noting that an employer's intent was show, in part, by the employer's refusal to investigate an employee who had harassed the plaintiff).

8

The Complaint raises an inference that the Department deliberately created intolerable working conditions by repeatedly ignoring Mr. Miller's reports that he had been threatened with violence and worked in a racially hostile workplace. After an employee threatened to slap Mr. Miller, he reported the threat to the Warden, but the Department took no action. Compl. at ¶¶ 7.a, 7.f. Seemingly around this same time, Mr. Miller sought assistance from the Employee Assistance Program, reporting that his working environment was "racially hostile." Id. at ¶ 7.c. But the Program, despite promising to help, did nothing. See id. at ¶ 7.c. Later in March 2023, after another employee threatened to kill Mr. Miller, he again asked the Warden for help, but none was provided. Id. at ¶ 7.f. Finally, Mr. Miller requested to be transferred to another facility, but this request was denied. Id. at ¶ 7.e.

Taken together, the Complaint plausibly alleges that the Department acted deliberately when it repeatedly declined to address Mr. Miller's reports. Contrary to the defendant's contention that Mr. Miller's allegations do not suggest the Department completely refused to remedy the situation, Def.'s Mem. Supp. at 9, Mr. Miller alleges "[t]he defendant failed to take any action to address the plaintiff's safety concerns." Compl. at 7.f (emphasis added). The Complaint contains sufficient factual allegations to plausibly allege that the Department acted deliberately in refusing to address Mr. Miller's complaints.

The Department next argues that Mr. Miller's Complaint fails to suggest the working conditions were so intolerable that a reasonable person would have felt compelled to resign. Def.'s Mem. Supp. at 8. The Complaint, which—in the Department's view—fails to adequately plead hostile work environment, necessarily fails

9

to allege intolerable working conditions because the latter standard is harder to meet. Id.

The court is unpersuaded by the defendant's argument. While it is true that a claim of constructive discharge is subject to a "higher [standard] than the standard for establishing a hostile work environment[,]" Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010), it is also true that the question of whether a work environment is intolerable is usually for the finder of fact to decide. Morris v. Schroder Cap. Mgmt. Int'l, 445 F.3d 525, 528 (2d Cir. 2006). At this early stage of the litigation, Mr. Miller's allegations of racial animus and threats of violence sufficiently and plausibly suggest the working conditions at issue may have been intolerable.

Having concluded that the Complaint adequately alleges constructive discharge, the court denies the Department's Motion to the extent it seeks to dismiss these claims brought under Title VII and CFEPA.

### C. Employment Discrimination

In order to adequately plead a claim of employment discrimination, the plaintiff has a minimal burden to allege facts that support two elements: "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015). To satisfy the first element, the plaintiff must allege the "employer discriminate[d] against [the] plaintiff by taking an adverse employment action against him." Id. at 85. An adverse employment action "include[s] discharge from employment. Such a discharge may be . . . a 'constructive' discharge.'" Fitzgerald v. Henderson, 251 F.3d 345, 357 (2d Cir. 2001). To satisfy the second element, the allegations must give rise to the inference the

plaintiff's protected characteristic played a "'motivating' factor contributing to the employer's decision to take the action [at issue]." Vega, 801 F.3d at 85.

The Department argues that the Complaint fails to suggest it took an adverse action against Mr. Miller and that the alleged facts do not suggest the Department's actions were motivated by Mr. Miller's race. Def.'s Mem. Supp. at 9–10. Mr. Miller opposes both arguments. Pl.'s Opp'n at 8–9.

Considering the first element, Mr. Miller, having adequately pled constructive discharge, see, supra part IV.B, has plausibly alleged that the Department took an adverse action against him. Accordingly, the Complaint alleges facts sufficient to satisfy the first element of a claim of employment discrimination.

Turning to the second element, when considering whether the alleged facts give rise to the inference that an employer's actions were motivated, at least in part, by racial animus, the Second Circuit has advised courts to view allegations "in light of the plaintiff's minimal burden to show discriminatory intent." Littlejohn, 795 F.3d at 311. With this directive in mind, the Complaint plausibly alleges facts suggesting members of the Department acted, or failed to act, because of Mr. Miller's race. Mr. Miller alleges that the Department failed to take any action, even though he reported that he was repeatedly threatened by white employees with physical violence and sought the Department's help in combating a "racially hostile" work environment. Compl. at ¶¶ 7.a, 7.c, 7.f–g. Further, Mr. Miller allegedly observed white employees bully and threaten other minority employees. Id. at ¶ 7.d. The facts alleged suggest that Mr. Miller may be able to create a "'mosaic' of intentional discrimination by identifying 'bits and pieces of

11

evidence' that together give rise to an inference of discrimination[.]" Vega, 801 F.3d at 87 (quoting Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir. 1998)).

The Department argues that Mr. Miller has failed to allege facts that plausibly suggest that discrimination, as opposed to other considerations, motivated the Department to act as it did.  See Def.'s Mem. Supp. at 10.  As just explained, however, the allegations do support the plausible inference that discrimination motivated the Department's actions.  And, at this early stage of the litigation, it would be inappropriate for the court to dismiss Mr. Miller's employment discrimination claims merely because there may be a competing explanation as to why the alleged facts do not show racial animus.  See Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014) ("That there may be other explanations for the defendant[']s[ ] employment decisions does not render [the plaintiff's] allegations of discrimination inadequate as a matter of law.").  Accordingly, Mr. Miller has alleged facts sufficient to suggest that the Department engaged in employment discrimination.  As a result, the Department's Motion is denied to the extent it moves the court to dismiss these claims.

**V.     CONCLUSION**

For the reasons stated above, having concluded that Mr. Miller has adequately alleged claims of hostile work environment, constructive discharge, and employment discrimination under Counts One and Two of the Complaint, the court denies the Department's Motion to Dismiss (Doc. No. 17).

**SO ORDERED.**

Dated at New Haven, Connecticut this 3rd day of December 2024.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge